```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3
     UNITED STATES OF AMERICA,
 4
                         Plaintiff,
 5   vs.                                  Case No. 18-20027
                                          Hon. Terrence G. Berg
 6   PRABHU RAMAMOORTHY,

 7                       Defendant.
     _____/
 8
                            SENTENCING
 9
              BEFORE THE HONORABLE TERRENCE G. BERG
10                 United States District Judge
              Theodore Levin United States Courthouse
11                 231 West Lafayette Boulevard
                     Detroit, Michigan  48226
12                 Thursday, December 13, 2018

13   APPEARANCES:

14   For the Plaintiff          MARGARET M. SMITH
     United States of America:  AMANDA JAWAD
15                              U.S. Attorney's Office
                                211 W. Fort Street
16                              Suite 2001
                                Detroit, Michigan  48226
17                              313-226-9135

18   For the Defendant          JAMES AMBERG
     Prabhu Ramamoorthy:        Amberg and Amberg
19                              104 W. Fourth Street
                                Suite 305
20                              Royal Oak, Michigan  48070
                                248-681-0115
21
     Also Present:              Rengachari Vijayaraghavan
22                              Court Interpreter

23
           To obtain a certified copy of this transcript, contact:
24         Linda M. Cavanagh, CSR-0131, RDR, RMR, CRR, CRC
                       Official Court Reporter
25              (313) 234-2616 • www.transcriptorders.com
```

1

TABLE OF CONTENTS

2                                                                    Page

3  SENTENCING:

4  Allocution by Mr. Amberg..............................15
   Allocution by Ms. Jawad..............................25
5  Comments by the Court................................33
   Sentence of the Court................................43

6

7

EXHIBITS

8

   Identification                      Offered     Received

9

   NONE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        Detroit, Michigan

2        Thursday, December 13, 2018

3                    — — —

4        (Proceedings commenced at 1:17 p.m., all parties

5        present)

6        THE CLERK:  The Court now calls Case No. 18-20067,

7    the United States of America versus Prabhu Ramamoorthy.

8        Counsel, please place your appearances on the record.

9        MS. JAWAD:  Good afternoon, Your Honor.  Amanda Jawad

10   and Maggie Smith on behalf of the United States, and with us at

11   counsel table is Special Agent Kyle Dodge with the FBI.

12       THE COURT:  Good afternoon.

13       MR. AMBERG:  And good afternoon, Your Honor.  It's

14   good to see you.  Jim Amberg on behalf of the defendant who is

15   sitting to my right, and to his right is the interpreter, Mr.

16   Vijay, who we know.  Mr. Mansour had a conflict and could not

17   make it here today.

18       THE COURT:  All right.  Thank you very much.  Good

19   afternoon, Mr. Amberg.  Good afternoon, Mr. Ramamoorthy.

20       Before we get started, I do want to just indicate we

21   were delayed yesterday because of your failure to appear, sir,

22   so I just want to make sure that you understand how serious

23   that is and it's not appropriate and it's not the kind of

24   service that we expect from our interpreters.  Do you

25   understand?

 1                THE INTERPRETER:  Yes.

 2                THE COURT:  All right.  Let's make sure that that

 3      doesn't happen again.

 4                Now, this is the date we have set for the sentencing

 5      in this case, and I understand there's an issue regarding a

 6      comfort canine or something to that effect.  Would someone like

 7      to address that?

 8                MS. JAWAD:  Yes, Your Honor.  The government

 9      previously agreed that the canine advocate would be in the

10      hallway because Mr. Mansour is highly allergic, but since he's

11      not here today, we would like to request that the canine be

12      allowed to sit in the courtroom with Laura.  The canine has

13      provided a significant amount of comfort to her both yesterday

14      and today, and I think it would be -- help ease her anxiety in

15      being here today and confronting the defendant if she were

16      permitted to sit with the dog.

17                THE COURT:  All right.  What's the position of the

18      defense, Mr. Amberg?

19                MR. AMBERG:  Your Honor, thank you.  The only real

20      issue that I think we have is I don't want the comfort canine

21      to become a distraction while the sentencing is going on.  I

22      sort of have thoughts about -- you know, like I don't want to

23      put Laura in a position where she feels less comfortable

24      because this -- the dog is not up here.  I would say just leave

25      the dog in the hallway.  I know that's what we were going to do

1    yesterday when Mr. Mansour was here.  I would ask the dog just

2    stay in the hallway I guess.

3          THE COURT:  Any response?

4          MS. JAWAD:  Yes, Your Honor.  We're not asking to

5    bring the dog up with Laura, just that the dog be able to sit

6    next to her.  And I noticed a very big difference in her

7    demeanor yesterday between before the dog arrived and after the

8    dog arrived.  She is fairly anxious and has a lot of anxiety

9    about what is happening today, and I -- I do think the dog --

10   it may seem trivial, but I actually think that having the

11   comfort of the canine next to her has calmed Laura and I've

12   seen the difference between what her demeanor was like before

13   and after.  And I don't think that a dog sitting in the

14   audience portion of the courtroom will provide any type of

15   distraction to the proceedings.  And there is precedent for

16   this.  Just last week Judge Murphy had a sentencing where there

17   was a canine advocate present, and the canine, the same dog,

18   sat in the courtroom and there were no issues with that.

19         THE COURT:  And Ms. Laura is present in the

20   courtroom, is that right?

21         MS. JAWAD:  That's correct, Your Honor.

22         THE COURT:  All right.  And would it be helpful to

23   you to have the dog present, ma'am?

24         THE WITNESS:  Yes, it would.  Thank you.

25         THE COURT:  All right.  Why don't you bring in the

1    dog and the dog can sit nearby but not...

2             MS. JAWAD:  Thank you, Your Honor.

3             THE COURT:  I think everyone understands that the dog

4    should not be a distraction in any way and no one's attempting

5    to make the dog a distraction.  That's an understandable

6    concern.  But at the same time, if such a procedure makes

7    the -- the stress of this type of a proceeding easier, then we

8    can try to accommodate that.

9             So Mr. Ramamoorthy, we're going to have a hearing to

10   determine what your sentence should be in this case, and I want

11   to make sure that you understand what's going to happen.

12            MS. JAWAD:  Your Honor, I'm sorry.  Before we begin,

13   has the interpreter been sworn?

14            THE COURT:  No, I don't think he has, so why don't we

15   go ahead and do that.  So, sir, would you raise your right

16   hand?

17             R E N G A C H A R I   V I J A Y A R A G H A V A N

18   was thereupon called as an interpreter herein, and after being

19   first duly sworn to translate from English to Tamil and from

20   Tamil to English to the best of their ability, translated as

21   follows:

22            THE INTERPRETER:  Yes.

23            THE COURT:  All right.  You may be seated, and please

24   proceed with the interpretation of these proceedings.

25            So I'm going to explain what's going to happen.  So

1  Mr. Ramamoorthy, we are having a hearing on what your sentence

2  should be.  We're going to go over the Pre-Sentence Report.

3  There was a Pre-Sentence Report that was prepared.  I want to

4  make certain that you've seen it and that you've gone over it

5  with your lawyer.  So I'll ask you some questions about it, and

6  then I'll also ask your lawyer whether he has any objections to

7  it.  I'll also ask the government counsel if they've reviewed

8  it and whether they have any objections to it.

9       Then we need to make certain that you understand what

10  the guidelines are that apply in your case.  The Pre-Sentence

11  Report contains a calculation of those guidelines and we'll go

12  over that calculation with you.  I'll make a determination as

13  to what the guideline range is in this case and then you'll

14  have an understanding of what those guidelines are.

15       I'll also go over with you what the different factors

16  are that the Court has to consider in determining what the

17  sentence should be because there's a federal statute or law

18  that requires the Court to take certain things into account at

19  the time of sentencing, and I'll go over all those things with

20  you to make sure you understand that.

21       I'm going to give your attorney an opportunity to

22  speak on your behalf and Mr. Amberg will do so.  He has also

23  provided to the Court a detailed sentencing memorandum or a

24  legal brief that contains a number of arguments on your behalf

25  as to what the sentence should be.  And then I've also received

1    a similar brief like that from the government and I've reviewed

2    that.

3              After your attorney has an opportunity to speak, I'll

4    give you an opportunity to say whatever you would like to say

5    on your own behalf.  I'd be happy to hear from you.

6              And then I will also ask the government to address

7    the Court, and at that point the government attorney will go

8    over what she believes the proper sentence should be in the

9    case.

10             After we've gone through all of that, I'm going to go

11   over the different factors that I do have to consider in

12   determining what the sentence should be, and I'll explain how I

13   think those factors apply in this case.  And then after I've

14   done that, I will indicate what the sentence will be.

15             Do you think you understand what's going to happen?

16             THE INTERPRETER:  Yes, he understands.

17             THE COURT:  All right.  Well, why don't you come up

18   to the lectern here with your attorney please.

19             MS. JAWAD:  Your Honor, would you like me at this

20   lectern or at the table?

21             THE COURT:  That's fine, if you -- you could go to

22   that lectern if you would.

23             So let me just ask Mr. Amberg, did you have a chance

24   to go over the Pre-Sentence Report?

25             MR. AMBERG:  I have, Your Honor, I went over it,

1    which is evidenced by my sentencing memorandum.  I also went

2    over it with Mr. Ramamoorthy.  I visited with him a number of

3    times at Milan to go over it.  We made some, not any major,

4    changes, but just some additions I suppose, and contacted the

5    Probation Department.  But really there wasn't anything too

6    different from what's -- what was in the original report,

7    just -- just some additions to it.  But we went over it at

8    great length.

9         I've discussed his guideline scoring that was in the

10   Pre-Sentence Investigation Report.  I don't think that there's

11   a disagreement as to what the guidelines are.  We've discussed

12   how that guideline was computed together to get that result.

13        I gave him a copy of the Pre-Sentence Investigation

14   Report.  I've also given him a copy of my memorandum that I

15   wrote as well as the government's memorandum that they

16   responded with as well.  So he's had all that.

17        I saw Mr. Ramamoorthy two days ago to sort of go

18   through final prep of the sentencing at Milian and, you know,

19   we discussed what was going to happen again today, so hopefully

20   he feels comfortable with what's going to happen here.  I

21   believe I've done everything I can to explain the circumstances

22   and the situation to him.

23        I know we have an interpreter here.  I want to make

24   sure he understands everything, and so I would ask that if he

25   has any questions -- Prabhu, if you have any questions, please

1    let me know and also ask Mr. Vijay as well.

2           THE COURT:  All right.  Thank you very much.  So you

3    don't have any objections to the Pre-Sentence Report then?

4           MR. AMBERG:  None, Your Honor.

5           THE COURT:  Okay.  And let me ask then Ms. Russo

6    [sic], do you have any objections to the Pre-Sentence Report?

7           MS. JAWAD:  No objection, Your Honor.

8           THE COURT:  All right.  Well, I did go over the

9    Pre-Sentence Report as well.

10          And so Mr. Ramamoorthy, you know, of course, that you

11   were charged in this case with a federal crime, and in

12   particular that crime was Criminal Sexual Conduct.  It was a --

13   it is a violation of Title 18 U.S. Code, Section 2242(2).  And

14   that a jury trial was held in this case and that you were found

15   guilty by the jury of this offense.

16          And the -- the offense under the Federal Sentencing

17   Guidelines has certain offense levels that are associated with

18   it, and for this offense, the guidelines start off with a Base

19   Offense Level of 30, and that's what the probation officer

20   determined here, that the guideline of Section 2A3.1 applied in

21   this case.  And I've reviewed the sentencing guidelines and I

22   agree that the Base Offense Level is 30 in this case.

23          Now, the Pre-Sentence Report also included what they

24   call a victim-related adjustment and that is a two-point

25   addition to the Base Offense Level, and that applies if you

1    have a situation where the victim was someone who would be

2    considered a vulnerable victim.  And a vulnerable victim is

3    defined in the sentencing guidelines and it includes situations

4    where a person is unable to resist, for example, the activities

5    of the defendant.  And in this case it was determined by the

6    probation officer that this was applicable, these two points.

7    That's what Section 3A1.1(b)1 provides for.  And so in this

8    case your Base Offense Level started at 30 and then you had an

9    additional two points added.

10           And the guidelines, just so you know, does define

11   vulnerable victim as "a person who is a victim of the offense

12   for which the defendant is accountable under the relevant

13   conduct rules, who is unusually vulnerable due to age, physical

14   or mental condition, or is otherwise particularly susceptible

15   to the criminal conduct."

16           And so the Probation Department did assess you those

17   two extra points, and both parties in this case are not

18   objecting to those two points.

19           I might indicate that there -- there is some case law

20   that also supports the application of those two points.  In

21   particular, it's an Eighth Circuit case that's called *United*

22   *States vs. Shoenborn*, and that's S-h-o-e-n-b-o-r-n, and that's

23   was a case where the court specifically addressed whether or

24   not in a case involving a violation of this particular statute,

25   whether this extra two points would apply.  And in that case,

```
 1    which can be found at 793 F.3d 964, that's a 2015 Eighth
 2    Circuit case, the court found that these two points did apply.
 3    The reason for the challenge in that case had to do with
 4    whether or not it would be considered some kind of double
 5    counting because the offense in this case itself includes the
 6    element that the victim in some ways is a vulnerable victim.
 7    Now, the court in that Eighth Circuit case indicated that the
 8    two points did apply.
 9          But I did want to just make it clear that the statute
10    in this case, that is, Section 2242(2), which is Sexual Abuse,
11    includes showing that the person who is the victim is either
12    "incapable of appraising the nature of the conduct," and that's
13    in 2242(2)(A), or the person is "physically incapable of
14    declining participation in, or communicating unwillingness to
15    engage in, the sexual act," and that's in 2242(2)(B).  Now, as
16    I said, the Eighth Circuit indicated that those two points were
17    still applicable here.
18          So the guideline range in this case, if we use the
19    Base Offense Level of 32, would result in a guideline range of
20    121 to 151 months.  That's the guideline range that the
21    Probation Department determined.
22          And I'm going through this so that it's all clear to
23    everyone what the guideline range is according to the Probation
24    Department in the Pre-Sentence Report.  So let me just ask
25    counsel, does everyone agree that that is the guideline range?
```

Sentencing • Thursday, December 13, 2018

13

1          MS. JAWAD:  Yes, Your Honor.

2          MR. AMBERG:  Yes, Your Honor.

3          THE COURT:  Okay.  All right.  So that's the

4    guideline range that's in the Pre-Sentence Report.  And as

5    there are no objections to that, I will accept the Pre-Sentence

6    Report and accept that as the relevant sentencing guideline

7    range.

8          I should add that the guideline range is an important

9    factor that the Court has to consider, but it is not mandatory

10   in the sense that the Court is not required to sentence someone

11   to a sentence within that guideline range.  The Court must

12   sentence a person to a range and a -- a sentence that is

13   sufficient but not greater than necessary to accomplish all the

14   goals of sentencing.  That's what the Court must do, that is

15   mandatory on the Court.  But the guideline range is one of

16   those factors that the Court must consider in determining what

17   the sentence is, and I'll go over those other factors with you

18   as well.

19         Do you think you understand everything that's

20   happened so far there, Mr. Ramamoorthy?

21         THE INTERPRETER:  I might have a question on that.

22         THE COURT:  I'm sorry?

23         MR. AMBERG:  Does he understand everything, can you

24   ask him?

25         (Brief pause)

1    DEFENDANT RAMAMOORTHY:  Yes, Your Honor.

2    THE COURT:  Okay.  So as far as the factors that the

3    Court has to consider, let me go over those with you.  I have

4    to consider a number of factors under a particular federal law,

5    and that's called Title 18 U.S. Code, Section 3553(a).  And so

6    I have to consider the nature and circumstances of the offense,

7    in other words, what kind of offense is it, what happened.

8    I also have to consider the history and

9    characteristics of the individual person, in other words, your

10   background, your history, things that you've done up until now,

11   your family situation, for example.

12   I also have to consider the need to have a sentence

13   reflect the seriousness of the offense and also promote respect

14   for law, provide for just punishment, protect the public,

15   afford what we call adequate deterrence, and that means

16   discouraging people from committing crimes, and also to provide

17   for whatever necessary education or medical treatment or

18   psychiatric treatment that a person might need.

19   And I also need to avoid what they call unwarranted

20   sentencing disparities.  That means treating people differently

21   when their underlying crimes and their underlying backgrounds

22   are really the same.  So we try to avoid those kinds of

23   unwarranted sentencing disparities.

24   So those are all the different factors that the Court

25   does have to take into account in determining what the sentence

 1    should be, and those are the factors that I will take into

 2    account.

 3           And as well, I might mention that it's helpful to the

 4    Court if the attorneys address those factors because, as I

 5    said, those are the factors the Court must consider.

 6           So at this point I'd like to ask Mr. Amberg to go

 7    ahead and address the Court on your behalf.

 8           MR. AMBERG:  Thank you, Your Honor.

 9           And Prabhu, do you understand?

10           DEFENDANT RAMAMOORTHY:  Yeah.

11           MR. AMBERG:  Your Honor, thank you.

12           I did provide a detailed sentencing memorandum that

13    went through the factors.  I'm going to just touch on a few of

14    them, but I'm not going to repeat everything I already said in

15    the memorandum if that's okay with the Court.  I see a few key

16    issues here in the sentencing that I would ask the Court to

17    look at in the determination of what to sentence Mr.

18    Ramamoorthy to.

19           The first thing that I -- I wanted to talk about was

20    the -- the collateral effects of what's going to happen to him

21    and what's already happened to him, and it's not just with him

22    but it's with his family as well.  I'm the first person to

23    agree that there's always going to be some sort of

24    collateral -- collateral consequence of a sentencing.

25    Somebody's incarcerated, it's going to put a hardship on the

1   family, it's going to put a hardship on the person who's

2   incarcerated.  But as I provided some case law to the Court,

3   there are times when that collateral consequence might be more

4   exceptional than in a normal sentencing, and I believe that's

5   here.

6        Mr. Ramamoorthy's wife is in the courtroom today.

7   After his conviction, he was no longer -- my understanding with

8   Immigration, he was no longer allowed to be here under his visa

9   and that he will ultimately be deported at the end of his

10  incarceration portion of his sentence.  Because of that, his

11  wife had to leave the country.  As you recall, Your Honor, Mr.

12  Ramamoorthy and his wife legally came to the United States for

13  work, and she was under his visa which allowed her to stay, and

14  even though she had a job here, the consequence of his

15  conviction affected her.

16        Now, the culture that Mr. Ramamoorthy and his wife

17  and his family are a part of is something that I think is

18  different than what we're used to in America.  They're from

19  southern India.  And from conversations that I've had with the

20  family, with Mr. Ramamoorthy, with his wife, with the doctor

21  who provided the letter to the Court, it's my understanding

22  that in this situation there will be a lifetime negative effect

23  for Mr. Ramamoorthy and the rest of his family.  The -- the

24  closest I could come to explaining it was in my memorandum

25  where I discussed shunning.  And it appears to me that even now

```
 1    when -- when his wife goes back to India, her future is now
 2    tied in to this case and to this verdict, and so that means a
 3    shunning from friends, from other family.  Her life prospects
 4    go down.  His mother and father suffer that as well.  They are
 5    from a small village with about a hundred families out in
 6    India.  Even if they have children eventually, if that happens,
 7    even they will be a product of that.  And so I don't think
 8    we're used to seeing that here.  I've never seen that before in
 9    a case.  But that consequence is a severe and lifelong
10    consequence that's in addition and unusual to what most people
11    go through when they're incarcerated.
12         Along those lines, this idea of deportation and loss
13    of career and loss of livelihood and things like that, I
14    understand that that comes with being incarcerated.  In this
15    situation it's a little different than maybe what we're used to
16    seeing where you have somebody who is illegally here in the
17    first place.  But Mr. Ramamoorthy, I mean his life is
18    effectively over.  He's no longer allowed to stay in the United
19    States, he'll be deported immediately.  As you can see from the
20    Pre-Sentence Investigation Report, I mean he worked his life to
21    come to America.  So that's a consequence.  His career is over.
22    From talking with him, my understanding, that the realities of
23    him finding a job in India are going to be limited based on
24    what's happened here.
25         So when we look at these consequences, both these
```

```
 1    cultural collateral consequences, the -- the economic
 2    collateral consequences, I would argue that they are more
 3    severe than normal.  And because of that, maybe a downward
 4    departure from the guidelines might be appropriate, and I did
 5    provide some case law to that effect.
 6              Another thing I discussed, and this is sort of on to
 7    the -- to put Mr. Ramamoorthy in -- in a better light, as you
 8    can see all the letters that were provided to the Court -- I
 9    apologize that some of those letters came in late -- but as you
10    can read, you -- when you read these letters, you're reading
11    about somebody that's fundamentally different from what we
12    heard about in court.
13              And I know that from speaking with -- you know, like,
14    for example, in the courtroom today we have some people that
15    are here: his wife is here, his brother is here, a family
16    friend is here.  Even Mr. Vijay knows Mr. Ramamoorthy from
17    outside of this.  Mr. Ramamoorthy before this situation was
18    involved in his temple very much on the -- the track up and
19    trusted by the elders in the temple.  He had no prior criminal
20    history at all, no evidence that anything like this had ever
21    happened before.  I did provide both in the original bond
22    motion back, you know, months and months ago as well as in this
23    memorandum a certificate from the consulate from India
24    reflecting that he had no criminal history in India.
25              I would argue that I -- I understand that we -- we
```

```
 1    had a trial and he was convicted, but it appears it was an
 2    isolated incident, and that since he was on bond, I don't
 3    believe there was any issues.  I know there might have been
 4    something in the beginning, but we were able to resolve that,
 5    but nothing serious.
 6              Another issue I thought was important in this case,
 7    and it's something that I think about with clients who are
 8    dealing with being incarcerated, is the victimization in
 9    prison.  And I did provide a case that discussed the situation
10    when officers go to prison and that their potential for
11    victimization might be greater, and that I think that we may
12    have that here.
13              Since he's been incarcerated, Mr. Ramamoorthy has had
14    a what I would consider to be a more difficult time than a
15    normal inmate would.  And again I'm going to preface that with
16    the understanding that prison is not a good experience at all,
17    but at the same time, prison shouldn't be more cruel than it
18    should have to be.  And my understanding is that since he's
19    been in prison, he's been assaulted, he's had his things
20    stolen --
21              THE COURT:  What happened with respect to this
22    assault?
23              MR. AMBERG:  He was slapped by another inmate.
24              THE COURT:  When did that occur and where did it
25    occur?
```

1              MR. AMBERG:  It occurred in Milan and it occurred --
2    was it two months ago?  October.  You made a complaint?
3              DEFENDANT RAMAMOORTHY:  Yeah.
4              MR. AMBERG:  He apparently made a complaint to the --
5    to the -- the guards.  Oh, to the warden?
6              DEFENDANT RAMAMOORTHY:  Warden and prison counselors.
7              MR. AMBERG:  And his counselor; don't know if you
8    heard that, Your Honor.  But he made a complaint to the warden
9    and the counselor about what had happened.  I know that he was
10   a -- an inmate.  I don't know if he knows who or whatever, but
11   somebody stole some of his things and that that also -- did
12   that happen around that time?
13             DEFENDANT RAMAMOORTHY:  Yeah, somewhere around two
14   weeks back.
15             MR. AMBERG:  Okay.  So that happened?
16             DEFENDANT RAMAMOORTHY:  Yeah.
17             MR. AMBERG:  And you -- and apparently he filed a
18   complaint for that as well.
19             His -- his sort of living situation right now, my
20   understanding is that he feels pressured to convert religions,
21   which I think is unusual but I think that's a fair thing to
22   say, right?
23             DEFENDANT RAMAMOORTHY:  Yeah.
24             MR. AMBERG:  I think that he may eventually have to
25   do that for protection.  He's basically alone in there.  You

```
 1    have somebody from India who's a -- not a citizen of the United
 2    States, who has no gang affiliations, no -- no other types of
 3    ties that I think would bond him to other inmates to -- to help
 4    him through this process, and so I -- I'm very concerned about
 5    his future in prison.  I don't know if he'll be able to
 6    survive.  And I do think, Your Honor, that is a reason that you
 7    could depart below the guidelines because of that and what
 8    we've already seen and what I think he'll probably experience
 9    as he goes forward no matter where he ends up.
10         I also wanted to talk about the case itself.  I don't
11    want to go into the facts or any arguments about what happened;
12    those days have passed.  But I do want to talk about the nature
13    of this conviction.  This conviction encompasses a lot more
14    than the completed crime and includes attempt as part of that
15    crime.  And when -- if you'll recall, Your Honor, during the
16    jury deliberations the jury actually came back with a note that
17    discussed this idea of attempt.  I can't remember exactly what
18    it said, but it looked like maybe -- and I don't want to read
19    into the tea leaves here, but maybe the jury, some of the
20    jurors couldn't decide between attempt and the fully committed
21    crime, but ultimately Your Honor let the jury know it doesn't
22    matter, the crime is the crime.
23         THE COURT:  And that was based on the jury
24    instructions that counsel and the Court believed were
25    appropriate, correct?
```

```
1          MR. AMBERG:  And I agree, Your Honor.  And my
2   argument isn't that -- my argument is that when you look at the
3   case and you look at this offense and you look at the
4   conviction, I would ask that you look at it through the lens
5   that this was an attempt.  I understand, and as I put in my
6   memorandum, the attempt is no different than the completed
7   crime, but I do believe that the Court can look at a conviction
8   and -- and look at what was proven.  The facts of this case,
9   you know, the confession, like I put in my memorandum, the
10  confession appeared to be for an attempt.  The -- the physical
11  evidence suggested maybe it was an attempt.  And so I would ask
12  that when Your Honor contemplates the -- the 3553(a) factors
13  when it discusses the nature of the offense, that you look at
14  that as well.
15          I wanted to come in and argue the differences between
16  state and federal sentencing but I can't.  There's a case that
17  stopped me from doing that.
18          But I do -- I do want to make that argument that I do
19  believe that in this situation, a below guideline sentence
20  would be appropriate.  If Your Honor asked, "Well, Mr. Amberg
21  what do you think would be the appropriate sentence?," he's
22  already been in custody now for I believe seven months, six or
23  seven months, give or take.  He was originally incarcerated,
24  then he was released on bond per our motion, and then after the
25  conviction put back into custody.  Custody became much worse
```

1    after that because of the conviction.

2         When you look at these factors and -- and you talk

3    about rehabilitation, you talk about sending signals to the

4    rest of the community as well as to Mr. Ramamoorthy about

5    continuing this type of abhorrent behavior, I don't know what

6    ten years in prison does, I don't know how that meets these

7    goals.

8         The second that he is done with his prison sentence,

9    he is out of this country within a matter of weeks.  He will

10   never step foot again in the United States and he will go home

11   to the rest of his life, which is going to be living with the

12   shunning of himself and the rest of his family because of this.

13   He'll have a long time to think about it and he will suffer

14   long after this sentence is done.

15        I thank you, Your Honor.  I thank you to the

16   government as well and to your staff.  I appreciate the

17   consideration on our sentencing memorandum, and I think that's

18   all I wanted to say.

19        THE COURT:  Thank you very much, Mr. Amberg.

20        And I did want to also indicate that I reviewed along

21   with your memorandum all of the letters that you submitted, and

22   they were also helpful to the Court.

23        And so Mr. Ramamoorthy, I would like to give you the

24   opportunity to say whatever you would like to say on your own

25   behalf.  I would like you to speak nice and clearly into the

1    microphone so that we can hear what you're saying and it can be

2    taken down accurately by the court reporter.

3             DEFENDANT RAMAMOORTHY:  No, Your Honor, I don't want

4    to talk, I'm -- I'm not talking.

5             MR. AMBERG:  Is it -- is it fair to say you would

6    not -- you don't want to say anything today?

7             DEFENDANT RAMAMOORTHY:  No, yeah.

8             MR. AMBERG:  Okay.  That was something that we

9    discussed previously?

10            DEFENDANT RAMAMOORTHY:  Yeah.

11            MR. AMBERG:  Okay.  And you under -- you understand,

12   and you have Mr. Vijay here, if you have any questions, you

13   understand that you have -- you have a right to say whatever

14   you want today and that you are choosing not to do that?

15            DEFENDANT RAMAMOORTHY:  Yeah, yes.

16            MR. AMBERG:  And that's something we discussed?

17            DEFENDANT RAMAMOORTHY:  Yes.

18            MR. AMBERG:  Okay.

19            THE COURT:  All right.  Well, you certainly don't

20   have to say anything if you don't want to say anything, but I

21   do want you to know that you can say whatever you would like to

22   say at this time.  You don't have to though, and I understand

23   you're telling me you don't want to, is that right?

24            DEFENDANT RAMAMOORTHY:  Yeah, okay.  Thank you.

25            THE COURT:  All right.  Okay.  Very good.  Well, we

1   will then ask Ms. Russo [sic] to go ahead on behalf of the

2   government and make whatever arguments she wishes to make.

3           MS. JAWAD:  Ms. Jawad, Your Honor.

4           THE COURT:  I'm sorry?

5           MS. JAWAD:  I think you confused me with April.

6           THE COURT:  Oh, I'm sorry about that.

7           MS. JAWAD:  That's all right.

8           THE COURT:  Yeah, sorry about that.

9           MS. JAWAD:  It's a common...

10          THE COURT:  Ms. Jawad.  Sorry about that, Ms. Jawad,

11  yeah.

12          MS. JAWAD:  No problem, Your Honor.

13          THE COURT:  Yeah, another name that begins with A,

14  Amanda Jawad, April Russo.

15          MS. JAWAD:  Same unit, same type of work.

16          THE COURT:  Forgive me.

17          MS. JAWAD:  No problem.

18          When Laura boarded that plane in January, she had no

19  idea that her life was never going to be the same again, that

20  she would spend the next year of her life replaying what

21  happened to her over and over, and that she'd no longer be able

22  to keep her job that requires frequent travel.  Laura will

23  carry the trauma of what Mr. Ramamoorthy did with her for the

24  rest of her life.

25          Now, the government's recommending a sentence of

1    130 months, and while this number is within the bottom half of

2    the guidelines here, we recognize that it is a long time for

3    someone who's never been to prison before.  But this

4    recommendation is justified not only by the nature and

5    circumstances of the offense here, but by Mr. Ramamoorthy's

6    conduct after the offense and continuing until this day.

7           But I'd like to start by first talking about the

8    offense itself.  There are few crimes more serious than a

9    penetrative sexual assault of a woman.  Sexual assault is

10   something that robs women of their agency, of their ability to

11   choose what or who enters their body, and the areas of Laura's

12   body that Mr. Ramamoorthy penetrated are the most private and

13   intimate areas that a woman has.

14          And this was just -- not just any sexual assault, and

15   I think there's two things that make this more egregious than

16   your average sexual assault, the first being that it occurred

17   on the airplane, and the second being that the defendant was

18   aware of, and intentionally took advantage of, Laura's mental

19   state at the time.

20          Being on an airplane presents unique circumstances

21   that exacerbate harm to the victims.  They're trapped with

22   nowhere to go, they can't move away easily and they can't call

23   the police.  In this case Laura was also cut off from all

24   communication with the outside world.  Her first instinct, if

25   Your Honor recalls from trial, was to text her boyfriend,

1    someone that she felt comfortable and close with, but she

2    couldn't get through to him.  She's not able to talk to anyone,

3    a loved one or call the police, after this happened.  It's very

4    different than being, for example, at a bar or a restaurant

5    where if a woman, you know, gets a bad feeling from a man or

6    notices a man paying attention to her, she can just walk away.

7    Laura was in the window seat on this airplane.

8            And this is a type of crime that has been increasing

9    in severity, as I pointed out in the government's sentencing

10   memo, and in the past three years our office has had -- past

11   two years our office has had three different cases of sexual

12   assault happening on an airplane.  In each of those cases and

13   also in some of the cases that I reviewed in researching in

14   connection with this case, the victim is always seated between

15   the defendant and the aisle.  The defendants in these cases

16   know that the victims can't get up and leave and that's

17   something that they take advantage of.

18           Mr. Ramamoorthy also took advantage of Laura's

19   specific vulnerability at that time.  Laura was not only

20   sleeping but she had been drinking, and Mr. Ramamoorthy was

21   aware of that.  He said that many times.  He knew that Laura

22   wasn't aware enough to resist the sexual contact.  He even

23   tested the waters somewhat by starting with the upper area of

24   her body, and as he admitted to the FBI, he first began

25   touching her chest area and playing with her bra, and then once

1    he realized the extent to which she was sleeping, that's when

2    he decided to go even further and violate her by going into her

3    pants.

4           And if this is truly the first time he's done

5    anything like this, this is a very dangerous first sexual

6    assault to commit.  You have his wife sitting on the left, and

7    he's not only touching a victim outside of her clothes but

8    going all the way inside of her pants to penetrate her, and

9    these actions show deliberate conduct on his part.  He made a

10   choice to take advantages -- take advantage of those

11   circumstances and violate Laura.

12          I'd also like to talk about Mr. Ramamoorthy's conduct

13   after the offense.  The first thing that Mr. Ramamoorthy did

14   after he got off the airplane was lie to the police.  We saw

15   videos during trial of what he told the officers.  He pretended

16   that he was asleep the whole time.  He said twice, "I didn't

17   intentionally touch her."  And even when he sat down with the

18   FBI, he first tried to lie to them and just said that "Laura

19   was sleeping on me."

20          It wasn't until Mr. Ramamoorthy started to fully

21   understand the extent to which the FBI knew what had happened

22   that he began to make admissions.  When -- when he realized the

23   FBI knew that her bra was unhooked in the back, that's when Mr.

24   Ramamoorthy started to admit that he had touched her bra and

25   then go further to admit that he tried to put his fingers

1   inside of her.  And even in that interview he downplays what he

2   did because we know from Laura that he did succeed and he did

3   put his fingers all the way inside of her and with such force

4   that Laura woke up, was startled, and then complained of

5   soreness to the nurse when she was examined later that day.

6          And then once we got to trial, he accused Laura of

7   just imagining the whole thing and making it up.

8          Now, the defendant has a right to go to trial, and

9   I'm not suggesting that the -- that the Court hold that against

10  him, but at that trial Laura was subjected to scrutiny that

11  victims of no other crime are subjected to.  Her outfit choices

12  were scrutinized, her drinking habits were scrutinized, even

13  her bathroom habits were scrutinized in this courtroom.  He

14  tried to deflect the blame and attention onto her rather than

15  accepting responsibility for what he did.  And even today Mr.

16  Ramamoorthy fails to accept responsibility for what he did.

17  Both his sentencing memo and his attorney's allocution focus

18  entirely on himself and the consequences that he's facing.

19         Now, under the United States Sentencing Guidelines

20  Policy Statement 5H1.1, the Court is not supposed to consider

21  the defendant's national origin, socio and economic status and

22  religion.  It's been deemed not relevant by the Sentencing

23  Commission.  But it's also important to put into perspective

24  that these collateral consequences that Mr. Amberg mentioned

25  are a result of Mr. Ramamoorthy's choices and Mr. Ramamoorthy's

1    actions.  This is not something that just happened to Mr.

2    Ramamoorthy.  This is something that he did.  His family and

3    his wife are in this situation because of his choices.

4            And he's shown no remorse or concern for the victim.

5    Other defendants in similar cases have shown -- apologized for

6    what they did in similar situations.  Mr. Ramamoorthy has not.

7    He's not expressed any kind of concern for the victim, and

8    that's similar to what happened in the *Jahagirdar* case cited in

9    the government's memo, and that's a First Circuit case from

10   2006.  The judge in that case said that he was initially

11   inclined to give a downward variance from the guidelines, but

12   when the defendant failed to show any kind of remorse or

13   concern for the victim, the judge decided to give a guideline

14   sentence.

15           And not only has Mr. Ramamoorthy failed to

16   acknowledge the harm that he caused Laura, he is not agreeing

17   to any amount of restitution despite attempts to reach an

18   agreement, and has been objecting to something as simple as

19   having a dog in the courtroom.

20           I'd also like to address defense counsel's argument

21   that this was an attempt and that somehow mitigates Mr.

22   Ramamoorthy's actions.  First, there's no evidence that the

23   jury convicted Mr. Ramamoorthy based on an attempt theory

24   versus a substantive crime.  I believe the question that the

25   jury had at trial was: is attempt a separate count or is it

1    included in the offense?  So that doesn't tell us that the jury

2    thought that this was an attempt.

3          And even if they did and even if Mr. Ramamoorthy was

4    convicted of attempt, I don't think that makes him any less

5    culpable.  If the Court recalls in his interview with the FBI,

6    he tells the FBI, "I tried, I was trying to put my fingers

7    inside of her," but he kind of explained that because he was

8    using his right hand, he wasn't as comfortable and he had a

9    hard time getting his fingers all the way inside of her.  So

10   it's nonsensical to suggest that he should somehow get a break

11   because the logistics of the positioning kept him from

12   accomplishing what he intended to do, and that was to violate

13   Laura.  And again, we know from Laura's testimony that he did,

14   in fact, succeed in doing that.

15         And the last factors that I would like to address are

16   the need for just punishment and deterrence.  This case has

17   received attention nationwide and there have been similar cases

18   after that and before it.  And I think it's important to send

19   the message to anyone who thinks about committing this type of

20   crime that there are significant consequences more than just a

21   slap on the wrist and being sent home.  It's not fair that

22   women have to fear that they could be assaulted just for flying

23   on an airplane, and a guideline sentence in this case will send

24   that message.

25         Your Honor, may I have a moment to consult with the

1   victim?

2          THE COURT:  You may.

3           (Brief pause)

4          MS. JAWAD:  Your Honor, the victim doesn't wish to

5   address the Court, but she has asked that I convey some of her

6   thoughts to the Court if that's all right.

7          THE COURT:  Thank you.

8          MS. JAWAD:  So one of the things that Laura wishes

9   the Court to know is how much her life has been impacted by

10  this case.  The defendant spoke about how his career is -- is

11  going to be affected and how his job and his ability to work is

12  affected, but -- but Laura's has as well.  If Your Honor

13  recalls from her testimony, she does a job that requires

14  frequent travel, and she hasn't been able to do the same job

15  that she was doing before.  After the incident she wasn't able

16  to fly and took a few months off, and in the course of that

17  turned down several job opportunities that would have been

18  fairly lucrative for her and given her exposure in her

19  career -- career field.

20          She did after a few months try to fly on an airplane

21  and ended up having a panic attack.  It was difficult for her

22  to breathe.  She felt like shortness of breath and just anxiety

23  in connection with the whole thing.  And she's also had other

24  panic attacks since this happened even not in connection with

25  flying on an airplane, and she didn't have those before the

1    incident.

2            She has difficulty sleeping sometimes.  Her boyfriend

3    sometimes finds her up at night ruminating about what happened.

4            Sometimes she gets stuck for days on end thinking

5    about what happened and isn't able to go about her daily life

6    and do the things that she did before.

7            She's lost interest in other activities and even work

8    activities that she used to enjoy.  She sometimes has trouble

9    getting motivated.  She didn't audition for several

10   opportunities this year because she didn't want to travel.

11           And the whole thing has been very emotionally

12   exhausting for her, and I think part of the reason is -- is

13   really the fear that she felt in that moment.  After what Mr.

14   Ramamoorthy did, Laura sat there terrified, she didn't know

15   what to do.  She didn't know whether telling a flight attendant

16   would cause some kind of altercation on the airplane.  She

17   didn't know whether Mr. Ramamoorthy would be angry, whether

18   there would be some sort of scene up in the air, and -- and

19   that really scared her.  And I think that's where the feelings

20   of anxiety and panic happened and continue to reoccur for her

21   throughout this time, so I think this is overall something

22   that's going to impact her for a long time.

23           Thank you, Your Honor.

24           THE COURT:  All right.  Thank you very much.

25           So in going over the different factors that apply,

```
 1    first of all, as I said, I need to consider the nature and
 2    circumstances of the offense in this case.  The offense is
 3    among the most serious kinds of offenses that our law
 4    criminalizes because it's a crime that involves an assault on
 5    another person.  It is criminal Sexual Abuse that carries a
 6    penalty, a maximum penalty of up to life in prison, which is
 7    the most serious penalty other than the death penalty that
 8    applies under the law of our country, and so it's a very
 9    serious offense just in terms of the kind of offense that it
10    is.
11            In terms of the facts here and what happened on a
12    flight that was from Las Vegas on Spirit Airlines on
13    January 3rd at the very beginning of this year, the defendant
14    was sitting next to the victim, and according to the evidence
15    presented in court, he did commit the crime of Sexual Abuse by
16    digitally penetrating her and also touching her, and this was
17    clearly a violation of this offense.
18            She was asleep at the time.  Her own testimony was
19    that she had been drinking and as a result she was very sleepy
20    and fell into a deep sleep, and so at that point she was not in
21    a position to object or perhaps even understand what was going
22    on because she was unconscious.
23            And so once the activity was so significant that it
24    awakened the victim, she did begin to text, try to text to her
25    boyfriend, that was part of the proof.  She expressed her
```

1    emotion, her outrage, her fear as to what had happened and
2    determined that she needed to tell someone right away, so she
3    went to the flight attendants and told the flight attendants
4    and they re-seated her.
5         Her clothing was unbuttoned, her pants were
6    unbuttoned.  She appeared to be upset and disheveled.  All that
7    was presented during the course of the trial.
8         Also during the trial the statement that Mr.
9    Ramamoorthy gave to the FBI, segments of that statement were
10   presented and the Court viewed those statements.  Ms. Jawad on
11   behalf of the government mentioned that portion of Mr.
12   Ramamoorthy's statement to the FBI agents where he said, "I
13   tried," and I do recall that as part of the statement that Mr.
14   Ramamoorthy made.  That was in reference to saying that he
15   tried to put his finger into the pants and -- of the victim.
16   And that was clearly part of the proof that was before the jury
17   in this case, and the jury found beyond a reasonable doubt that
18   Mr. Ramamoorthy had committed this offense.
19        Since we're talking about the nature of the offense
20   and part of the argument that counsel has made on behalf of Mr.
21   Ramamoorthy relates to the issue of whether this could more
22   properly be considered an attempt, I want to address that
23   simply by saying, first of all, as I think all counsel has
24   recognized, that distinction doesn't matter for this offense
25   because this offense includes within it "to attempt to commit

1    criminal Sexual Abuse."  If you attempt to commit criminal

2    Sexual Abuse, you violate this same statute that the defendant

3    was convicted of.

4         Now, there was -- there was a question from the jury

5    in this case, and we went over that at the time of the trial

6    and the parties had a chance to know what that question was and

7    we fashioned a response for the jury.  That question was -- and

8    I have it right here.  It said, "Are there two charges under

9    consideration, i.e., one, Sexual Abuse, two, Attempted Sexual

10   Abuse?"  Question mark, there are three question marks.  And

11   then it said, "The verdict form only includes Sexual Abuse.

12   Please clarify."

13        And we responded.  I won't read the entire response,

14   but we responded to the jury.  I say we because I prepared a

15   proposed response to the jury and I read that to counsel and

16   then we delivered it in open court to the jury, which

17   essentially said that the charge of Sexual Abuse includes both

18   Sexual Abuse and Attempted Sexual Abuse.  And then we

19   referenced the different jury instructions that set out the

20   elements for Sexual Abuse and the elements for Attempted Sexual

21   Abuse and the jury instruction that indicated that the jurors

22   needed to find that the defendant committed this act

23   unanimously in one of these two ways.

24        And so that is the issue of attempt here.  It's not

25   really knowable to the Court or to anyone which manner the jury

1     considered the evidence here, but there's no question that they
2     were properly instructed as to the law and they reached a
3     unanimous verdict that the defendant had violated this statute.
4          So that is the type of offense that we have here and
5     it is an extremely serious offense.
6          I also want to mention that the statute does include
7     within it the requirement that the person who is being
8     victimized is "incapable of appraising the nature of the
9     conduct or physically incapable of declining to participate in,
10    or communicating unwillingness to engage in, the sexual act,"
11    and that was certainly the case here.  That was part of the
12    proof here and it's part of the reason why the offense is a
13    very serious offense.
14          In terms of the history and characteristics of the
15    individual defendant, I've looked over the Pre-Sentence Report
16    carefully regarding this, and Mr. Ramamoorthy up until this
17    point has lived a lawful-abiding life, a law-abiding life.  He
18    has attained an education while he was in India.  He received a
19    bachelor's degree in -- in technology.  He was able to
20    successfully complete several different jobs while he was in
21    India after attaining his degree and then was able to obtain a
22    position in the United States, came over to the United States
23    and worked here, again in a law-abiding manner.  He was married
24    and brought his wife here as well, and since June of 2015 was
25    working here in the United States without causing any problems

1    to anyone.

2          All of these things are factors that weigh in favor

3    of Mr. Ramamoorthy because it shows that he has, as I say,

4    lived a law-abiding life up until this time, and I do weigh

5    those in his favor.

6          I did read the different letters of support that

7    corroborate this conclusion about his good character up until

8    now.  There were many statements of support for him and

9    indications of people who believed that he had a good

10   character, and so part of what makes this case somewhat hard to

11   understand is that fact.  You have an individual who up until

12   now has not really done anything illegal, has not harmed

13   anyone, has not ever been in prison or been arrested, and yet

14   now is facing such serious consequences for his conduct.

15         And so those are the two first factors that I need to

16   consider as far as the seriousness of the offense and the

17   history and characteristics of the individual person.

18         In terms of deterrence, there is a concern for

19   deterrence here because this kind of activity is so serious and

20   so harmful to the victim that a serious penalty is necessary to

21   make certain that both the individual, in this case Mr.

22   Ramamoorthy, but also that society as a whole recognizes that

23   this kind of behavior carries very onerous, difficult

24   consequences for anyone who would engage in that kind of

25   conduct, and that protecting victims from this kind of conduct

1    is extremely important to society, and so there is a need under

2    deterrence to impose a significant penalty.

3              In terms of protecting the public, there is also a

4    need to protect the public, but it's not as much of a need

5    because of the fact both that up until now, as I said, the

6    defendant had not committed any conduct like this, but also

7    because he does face deportation, and so any protection of the

8    public would be accomplished by his being removed from the

9    United States.  That would protect the public in the United

10   States.

11             But the other issue the Court has to consider is the

12   need to impose a just punishment and a punishment that promotes

13   respect for law.  A just punishment here, as I said, does need

14   to be a serious punishment.  The crime is a crime that harmed

15   another human being in a very serious way.  And I have

16   certainly considered and am considering the statements that Ms.

17   Jawad placed on the record that were the statements and

18   concerns of the victim in this case, and I weigh that very

19   seriously in determining a sentence that would be promoting

20   respect for law and providing for a just punishment.

21             The government is seeking a sentence that is in the

22   mid-point of the guideline range, which is 130 months.  Now,

23   130 months is a very lengthy sentence.  I don't think that a

24   sentence of 130 months is necessary in this case because I

25   think that is greater than necessary to accomplish these goals

1     that I've described.  That's nearly 11 years.

2          And I need to consider both what I might call

3     aggravating and mitigating circumstances here in this case.

4     Among the aggravating circumstances are some that I've already

5     mentioned: the fact that the victim was asleep and intoxicated,

6     unable to in any way respond, and so she was a vulnerable

7     victim; the fact that the defendant's wife was present at the

8     time is of concern; the fact that Mr. Ramamoorthy did not tell

9     the whole truth to the FBI when he was interviewed.

10         Further, in reviewing Mr. Ramamoorthy's statements,

11    it appeared that he was attempting in some ways to place the

12    blame on the victim by referring to how she was dressed and the

13    fact that she was -- appeared to be drunk to him.  Those

14    statements were of concern.  He did essentially admit the

15    offense when he talked to the FBI eventually by admitting that

16    he tried to commit this offense and that's attempt.

17         I am concerned that there is no -- no expression of

18    remorse here, no real concern by Mr. Ramamoorthy for the

19    victim.  I'm not going to give that too much weight here

20    because the defendant has the right to remain silent.  He's

21    chosen to remain silent, that's his right, and he can't be

22    forced to say anything and I certainly am not forcing him to

23    say anything.

24         The -- on the mitigating side here, as I said before,

25    Mr. Ramamoorthy has no criminal record whatsoever.  He's led a

1    productive and law-abiding life up until this point.  He's been

2    an educated person, a professional.  He's had employment, he's

3    maintained employment.  He's been supportive to his wife and

4    his family.

5            I am concerned about what Mr. Amberg said regarding

6    his having been assaulted in prison.  That is completely

7    unacceptable and under no circumstances should that ever be

8    permitted, and I will contact and make certain that wherever he

9    is designated, every effort is made to ensure his safety.

10           With regard to the issue I mentioned before about

11   whether the facts of the case were more consistent with an

12   attempt than with a fully completed crime, I give that some

13   weight here but not very much weight.  The reason I give it

14   some weight is because there was a question from the juror

15   about that and I'm not going to disregard that; that is part of

16   the record in this case.  But as I said previously, attempt is

17   part of this offense, and so an attempt is still a violation of

18   this statute.

19           I have also listened to what Mr. Amberg indicated

20   about the potential consequence of shunning or mistreatment of

21   Mr. Ramamoorthy's family or himself in India, which Mr. Amberg

22   has described as severe and lifelong.  That may well be a

23   difficult consequence of this offense and this conviction and

24   this sentence.  I'm not certain what difference it would make

25   in that consequence regardless of how long the sentence may be.

 1          The question for the Court is whether there is a

 2     basis for any variance from the guideline range under these

 3     different factors that I've gone through here.  The guideline

 4     range is -- that the parties have agreed to here is 121 to

 5     151 months.

 6          And given the fact that there are both significant

 7     aggravating circumstances but also a number of mitigating

 8     circumstances that I've gone through here, in some ways there

 9     is a balance between the two.  I do believe that a very serious

10     sentence is appropriate here.  It should be a sentence that is

11     sufficient to accomplish all these goals that I've described,

12     but it shouldn't be greater than necessary to accomplish all

13     these goals.

14          I've thought very hard about what this sentence

15     should be, and as I said, I think it should be a very serious

16     sentence and a sentence that is grave enough to send a message

17     that these kinds of activities are not to be committed and that

18     anyone who does commit them will have to weigh the consequences

19     of on a very significant penalty.

20          Having considered all of these factors, I believe

21     that in this case a sentence of 108 months is sufficient but

22     not greater than necessary to accomplish all the goals of

23     sentencing.  That represents a small variance from the bottom

24     of the guideline range, and I believe that that's justified for

25     the reasons that I've described as mitigating factors here.  I

1    won't go through them all again, but I believe that it's

2    necessary that the sentence be lengthy in order to provide for

3    an appropriate deterrent.

4         That is the sentence that I intend to impose.  There

5    are a number of additional conditions, including supervised

6    release.  But before I impose sentence, I want to ask both

7    parties if they have any objections they wish to place on the

8    record.

9         MR. AMBERG:  No, Your Honor, for Mr. Ramamoorthy.

10        MS. JAWAD:  No objection, Your Honor.

11        THE COURT:  Pursuant to the Sentencing Reform Act of

12   1984, the Court, considering the sentencing guidelines and

13   factors of 18 U.S. Code, Section 3353(a), hereby commits the

14   defendant, Prabhu Ramamoorthy, to the custody of the Bureau of

15   Prisons for a term of 108 months.

16        It is further recommended that the defendant be

17   designated to an institution with a comprehensive sexual

18   offender treatment program.

19        Upon release from imprisonment, the defendant shall

20   be placed on supervised release for a term of five years.

21        It is further ordered Mr. Ramamoorthy pay a special

22   assessment of $100, which will be due immediately, and a

23   Justice for Victims Trafficking Act, or JVTA, assessment of

24   $5,000.

25        The Court waives the imposition of a fine, costs of

1    incarceration and costs of supervision due to the defendant's

2    lack of financial resources.

3          While in custody, the defendant shall participate in

4    the Inmate Financial Responsibility Program or IFRP.  The Court

5    is aware of the requirements of the IFRP and -- and approves

6    the payment schedules of this program and hereby orders the

7    defendant's compliance.

8          The mandatory drug testing condition is suspended

9    based on the Court's determination that defendant poses a low

10   risk of future substance abuse.

11         While on supervision, the defendant shall abide by

12   the standard conditions as adopted by the U.S. District Court

13   for the Eastern District of Michigan and shall comply with the

14   following special conditions:

15         Due to the nature and circumstances of the instant

16   offense, the following special conditions are ordered:

17         Number one, the defendant shall comply with the

18   requirements of the Sex Offender Registration and Notification

19   Act as directed by the probation officer, the Bureau of Prisons

20   or any state sex offender registration agency in which he

21   resides, works, is a student, or was convicted of a qualifying

22   offense.

23         The defendant shall successfully complete any sex

24   offender diagnostic evaluations, treatment or counseling

25   programs as directed by the probation officer.  Reports

1    pertaining to sex offender assessments and treatment shall be

2    provided to the probation officer.  Based on the defendant's

3    ability to pay, the defendant shall pay the cost of diagnostic

4    evaluations, treatment or counseling programs in an amount

5    determined by the probation officer.

6            Number three, the defendant shall be required to

7    submit to periodic polygraph testing at the discretion of the

8    probation officer as a means to ensure compliance with the

9    requirements of supervision or treatment.  No violation

10   proceedings will arise solely on the results of a polygraph

11   examination.  Based on the defendant's ability to pay, the

12   defendant shall pay the cost of polygraph examinations in an

13   amount determined by the probation officer.

14           Number four, the defendant shall not associate with

15   minor children under the age of 18, except in the presence of a

16   responsible adult who is aware of the nature of his background

17   and the current offense, without prior approval of the

18   probation officer.  The defendant may have unsupervised contact

19   with any of his own children at the discretion of the probation

20   officer, if he should have children.  The defendant shall not

21   frequent places where children congregate on a regular basis

22   such as, but not limited to, school grounds, playgrounds, child

23   toy stores, video arcades, et cetera.

24           Number five, defendant shall notify anyone that he

25   may date or marry with a minor child under the age of 18 of his

1    conviction.

2          Number six, the defendant shall not purchase, sell,

3    view or possess images in any form of media or live venue that

4    depict pornography, sexually explicit conduct, child erotica or

5    child nudity.  The defendant shall not patronize any place

6    where such material or entertainment is available.

7          Number seven, the defendant shall have employment

8    pre-approved by the Probation Department.  The defendant shall

9    not be employed at or participate in any volunteer activities

10   that involve contact with minors under the age of 18 or adults

11   with disabilities without prior approval of the probation

12   officer.

13         Number eight, the defendant shall have all residences

14   pre-approved by the Probation Department.  The defendant shall

15   not provide care or live in a residence where children under

16   the age of 18 or adults with disabilities also reside without

17   prior approval of the probation officer.

18         Number nine, the defendant shall participate in the

19   Computer/Internet Monitoring Program administered by the U.S.

20   Probation Department.  The defendant shall abide by this

21   program agreement in effect at the time of supervision and

22   shall comply with any amendments to the program during the term

23   of supervision.  Due to the advances in technology that may

24   occur, the Court will adopt the amendments to this program as

25   necessary.  For the purpose of accounting for all computers,

1   hardware, software and accessories, the defendant shall submit

2   his residence, person, computer and/or vehicle to a search

3   conducted by the U.S. Probation Department at a reasonable time

4   and in a reasonable manner.  The defendant shall inform any

5   other residents that any premises where he is living may be

6   subject to a search pursuant to this condition.  The defendant

7   shall provide the probation officer with access to any

8   requested financial information, including billing records for

9   telephone, cable, Internet or satellite.

10          Number ten, the defendant shall submit his person,

11  residence, office, vehicles, papers, business or place of

12  employment and any property under his control to a search.

13  Such a search shall be conducted by a U.S. probation officer at

14  a reasonable time and in a reasonable manner based upon a

15  reasonable suspicion of contraband or evidence of a violation

16  of a condition of release.  Failure to submit to such a search

17  may be grounds for revocation.  The defendant shall warn any

18  residents that the premises may be subject to searches.

19          Number 11, the defendant shall not have contact,

20  directly or indirectly, with any victim or witness in this

21  instant offense unless approved by the probation officer.

22          Number 12, the defendant shall not own or possess a

23  camera, photographic device and/or equipment, including video

24  recording equipment, without prior approval of the probation

25  officer.

1           The defendant shall not incur any new credit charges

2     or open any additional lines of credit without the approval of

3     the probation officer unless the defendant is in compliance

4     with any payment schedule.  That's number 13.

5           Number 14, the defendant shall provide the probation

6     officer with access to any requested financial information.

7           And number 15, the defendant shall make monthly

8     installment payments on any remaining balance of any fine or

9     special assessment at a rate or schedule recommended by the

10    Probation Department and approved by the Court.

11          That is the sentence of the Court.  Mr. Ramamoorthy,

12    you do have the right to appeal this conviction and this

13    sentence.  If you intend to appeal this conviction and this

14    sentence, you would need to do so within 14 days of the date

15    that the judgment is issued, the written judgment.  Do you

16    understand that?

17          DEFENDANT RAMAMOORTHY:  Yes.

18          THE COURT:  All right.  Is there any objection or any

19    other matter that either party wishes to place on the record?

20          MR. AMBERG:  Just one, Your Honor.  I don't know

21    where exactly he would go, but there -- is there any chance

22    that Your Honor could recommend like the Texas region?  His

23    brother lives down there.  I think for purposes of his family

24    visiting would be a lot easier down there than somewhere, you

25    know, up here.

| | |
|---|---|
| 1 | THE COURT:  Do you have any particular institution in |
| 2 | mind? |
| 3 | MR. AMBERG:  I don't, but now that I know the |
| 4 | sentence, I could probably go back and -- and look at it and |
| 5 | see what's around.  I assume there's gotta be something down |
| 6 | there that meets the requirement. |
| 7 | THE COURT:  Well, I do recommend that Mr. Ramamoorthy |
| 8 | be designated to a federal correctional institution in the |
| 9 | state of Texas.  That is a large state.  Is there a particular |
| 10 | region or city area you're talking about. |
| 11 | MR. AMBERG:  Where's your brother live? |
| 12 | DEFENDANT RAMAMOORTHY:  Austin. |
| 13 | MR. AMBERG:  Austin?  Austin if it's possible, Your |
| 14 | Honor. |
| 15 | THE COURT:  So somewhere in the Austin, Texas region? |
| 16 | I'd be happy to recommend that.  If you have a particular |
| 17 | institution in mind and you notify us within the next 24 hours, |
| 18 | we will try to put that in the judgment. |
| 19 | MR. AMBERG:  Thank you, Your Honor. |
| 20 | THE COURT:  Anything -- anything on behalf of the |
| 21 | government? |
| 22 | MS. JAWAD:  Yes, Your Honor.  There is the issue of |
| 23 | restitution.  The parties were not able to come to an agreement |
| 24 | with respect to the numbers, so we ask that the Court set a |
| 25 | date at which we can set the amount of the victim's losses. |

 1          THE COURT:  Would that not be then included within

 2    the judgment?

 3          MS. JAWAD:  So the judgment can be left open for up

 4    to 90 days for the issue of restitution, so hopefully sooner

 5    than 90 days this can be worked out, but basically the judgment

 6    would remain open until this is resolved.

 7          THE COURT:  So you're saying we would not issue the

 8    judgment until the restitution is determined?

 9          MS. JAWAD:  That's correct.

10          THE COURT:  Well, we'll try to do that quickly.  How

11    long is that going to take?

12          MR. AMBERG:  Your Honor, we're still in the process

13    of discussing restitution.  I'm not convinced that we will

14    ultimately have a restitution hearing.  I'm going to see Mr.

15    Ramamoorthy next week after which the dust, you know, sort of

16    settles I guess is a good way to put it, and then we're going

17    to discuss it again.  We've discussed it before, the issue of

18    restitution, and we may be able to resolve it.  I know that the

19    government has been trying to resolve it as well.  So I don't

20    want to wait too long for the hearing, but at the same time I

21    don't want to -- if this is something that we can resolve --

22    and I still think we might be able to.  We haven't been able to

23    do it yet.  I know they've tried.  But like I said, I think

24    that maybe let's see what happens next Friday when I see him.

25          THE COURT:  All right.  Well, we'll determine what to

 1   do.  It could be that we could issue the judgment and amend it

 2   later with the order of restitution if that's another way to do

 3   it.  Would that be a good way to go?

 4           MR. AMBERG:  I mean if that...

 5           MS. JAWAD:  Yes, Your Honor, that's fine with me.

 6   It's -- it's 18 USC 3664(d)(5) that provides the final

 7   determination can be made up to 90 days after the sentencing.

 8           THE COURT:  All right.  Thank you very much.  Is --

 9   yes, go ahead.

10           MR. AMBERG:  I apologize, I apologize, Your Honor.  I

11   do -- because it does concern when his Notice of Appeal should

12   be filed.  I think if we do it -- is that the way that we're

13   going to do it where the judgment will be entered and we'll

14   just amend it later with the restitution amount?  Because then

15   I think that would kick in his need to do this immediately, to

16   file that 14 -- within 14 days claim of appeal.  So I just want

17   to make sure I know that because I'm going to go do that and

18   then that way he's protected.

19           MS. SMITH:  Your Honor, if I may address this issue

20   of restitution.  It's really kind of a procedural problem.  If

21   you issue a judgment, then the rules say that an amended

22   judgment can only be filed under certain circumstances within

23   14 days of the initial judgment being entered.  It also is

24   going to affect his time to file a Notice of Appeal.  And if we

25   issue a judgment and then issue an amended judgment with

1    restitution, it's going to affect the way that the Court of

2    Appeals is going to docket the case.

3            The cleanest way I think is to perhaps give us until

4    next Friday to communicate with the Court.  If we've resolved

5    the issue, then you're only holding the judgment open for a

6    period of a week and a half.  But there -- there -- there is

7    kind of a procedural posture if you enter a judgment in the

8    next day or so and then try to enter another one 30 days from

9    now.  The rules allow you to hold it open until the issue of

10   restitution is resolved.

11       THE COURT:  Is there any impediment, any legal

12   impediment to issuing the judgment several weeks after the

13   sentence is imposed in open court?

14       MS. SMITH:  Not under these circumstances when you

15   have a restitution request, as long as the Court is aware that

16   the restitution matter is pending.

17       THE COURT:  All right.  Well, this isn't my

18   preference because I think it's much better to have a judgment

19   issued as soon after the sentence is pronounced in open court

20   as possible, and so really this should have been resolved, you

21   all should have gotten this resolved before now.  But I would

22   say that we would want to try to issue this by no later than

23   let's say January 4th.  Can you get it resolved by then?

24       MR. AMBERG:  Judge, I think it's going to be resolved

25   next Friday.  And I would say, Your Honor, that the government

1    did -- they did approach me, it wasn't yesterday or anything

2    like that, it was a while ago, and we've gone over it trying to

3    figure something out.  So I -- this is something that we have

4    had a negotiation back and forth, but, you know, it's -- it

5    was -- bringing it up yesterday was very difficult to talk that

6    with him with the gravity of what's going on.  I think next

7    week it'll be easier, now that we know what's happened here,

8    to -- to probably finalize that restitution.  So I think next

9    Friday.  I'll contact the Court if -- as soon as I hear from

10   Mr. Ramamoorthy.

11             THE COURT:  All right.  Well, I'm just looking, so

12   for either the next -- the first Friday in January is

13   January 4th and the next one is January 11th, so it's really no

14   later than by January 11th, all right?  Let's get this resolved

15   as soon as we can.

16             Is there anything else?

17             MS. JAWAD:  Not from the government, Your Honor.

18             MR. AMBERG:  No, Your Honor, from Mr. Ramamoorthy.

19             THE COURT:  All right.  Thank you very much.  We can

20   be adjourned in this matter.

21             MS. JAWAD:  Thank you, Your Honor.

22             THE CLERK:  Please rise.  Court is in recess.

23             (Court in recess at 2:42 p.m.)

24                              —  —  —

25

C E R T I F I C A T I O N

1

2          I, Linda M. Cavanagh, Official Court Reporter of the

3    United States District Court, Eastern District of Michigan,

4    appointed pursuant to the provisions of Title 28, United States

5    Code, Section 753, do hereby certify that the foregoing pages 1

6    through 53 comprise a full, true and correct transcript of the

7    proceedings held in the matter of United States of America vs.

8    Prabhu Ramamoorthy, Case No. 18-20027, on Thursday, December

9    13, 2018.

10

11

12                          s/Linda M. Cavanagh
                       Linda M. Cavanagh, RDR, RMR, CRR, CRC
13                     Federal Official Court Reporter
                       United States District Court
14                     Eastern District of Michigan

15

16

17   Date: March 4, 2019
     Detroit, Michigan
18

19

20

21

22

23

24

25