nUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, vs. **PRABHU RAMAMOORTHY**, Defendant. | **2:18-CR-20027-TGB-MKM** **ORDER DENYING MOTION FOR HABEAS RELIEF** |

After a jury trial, Defendant Prabhu Ramamoorthy was found guilty of one count of sexual abuse under 18 U.S.C. § 2242(2) and subsequently sentenced by this Court to 108 months of incarceration. After unsuccessfully appealing his conviction to the Court of Appeals for the Sixth Circuit, he filed a habeas petition under 28 U.S.C. § 2255 seeking to vacate his conviction. For the reasons that follow, the Motion (ECF No. 93) is **DENIED,** and the claims are **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

A brief outline of pre-trial proceedings is helpful in setting the context of this motion. Mr. Ramamoorthy made his initial appearance on January 3, 2018. ECF No. 3. He was appointed counsel from the Federal

1

Defender's Office shortly thereafter, but his family chose to retain private counsel and Attorney James Amberg made his appearance on January 8. ECF No. 8. Although Mr. Ramamoorthy was initially detained by the Magistrate Judge, Mr. Amberg was eventually able to secure his release on bond. ECF No. 30. He filed and argued several other motions on Ramamoorthy's behalf in the coming months.

From his initial appearance on the criminal complaint on January 3, 2018, until the hearing on his motion to suppress his statement, held on May 31, 2018, Mr. Ramamoorthy appeared in person before the court six times. During the first five appearances, neither Mr. Ramamoorthy nor his counsel expressed any concerns regarding his ability to speak and understand the English language. No requests were made in any of those five proceedings to have an interpreter present, even though some of these matters were lengthy hearings covering complex legal arguments, and others involved direct colloquies with the Court asking Mr. Ramamoorthy questions and his giving responses in English. *See* ECF Nos. 3, 4 (Initial Appearance); 7 (Detention Hearing); 13 (Arraignment); 25 (Tr. of Hearing on Motion for Revocation of Detention Order); 33 (Tr. of Hearing on Motion for Reconsideration).

However, in a suppression motion Mr. Ramamoorthy for the first time raised the issue that he was not a native English speaker, and that the voluntariness of his waiver of rights, given prior to his interview by the FBI, was in question because of his possible lack of comprehension.

2

Motion to Suppress Statements, ECF No. 34, PageID.228, 232-35. At a hearing on this Motion, for the first time Mr. Ramamoorthy requested and was given an official court interpreter to provide translation services from English to his native language of Tamil and the reverse.

Mr. Ramamoorthy testified at this hearing that he could understand day-to-day conversation, but that "sometimes there are new words, if it only 60% I understand and the remaining 40% I guess I like think OK this is what they are talking about." Tr. 7/31/18 at 30:14-17, ECF No. 49, PageID.423. At this same hearing, Mr. Ramamoorthy testified that his attorney, Mr. Amberg, would explain each court document to him two or three times, and that when he explained them, he understood them "a little bit." *Id.* at 31:4-6, PageID.424. He also admitted that in his employment he gave PowerPoint presentations in English, as well as completed his immigration paperwork, his employment contract, his bank account opening documents, and his Michigan driver's license, all in English. *Id.* at 41:20-43:8, PageID.434-36. At the conclusion of the hearing, based on its careful review of the video-taped interview of Mr. Ramamoorthy and all the evidence, the Court denied the motion to suppress, finding by a preponderance of the evidence "that Mr. Ramamoorthy did speak English, that he understood what his rights were" and that his waiver was voluntary. *Id.* at 80:23-81:6, PageID.473-74.

Once the case was set for trial, the Court held a pre-trial conference on August 2, 2018, where Mr. Ramamoorthy, Attorney Amberg, co-counsel Victor Mansour, and an interpreter were all present. At the beginning of the pre-trial conference, Mr. Amberg noted that he was aware the parties would be going over the proposed Rule 11 Plea Agreement that the government had sent to him for Mr. Ramamoorthy and stated, "my understanding is he will reject that, but I was able to go over that ahead of time with the translator." Tr. 8/2/18 at 4:18-23, ECF No. 80, PageID.918. At the conference, the defendant was arraigned on the First Superseding Indictment, and the Court advised the defendant that he had the right to plead not guilty and to have a trial in which the government would have the burden of proving him guilty beyond a reasonable doubt. Through the translator, Mr. Ramamoorthy stated that he understood. *Id.* at 9:18, PageID.923.

Then the Court inquired whether a written plea agreement had been offered, and the government indicated that it had sent a proposed Rule 11 Plea Agreement to defense counsel on June 26, 2018, outlining a guideline range of 70 to 87 months, with a cap at the top of the range. Mr. Ramamoorthy through the interpreter said, "Yes, Your Honor, I understood that." *Id.* at 10:13, PageID.924. The government went on to explain that, if the defendant were to be convicted after a trial, the potential sentencing exposure would be 97 to 121 or greater depending on whether certain enhancements were applied under the guidelines. *Id.*

4

at 10:2-20, PageID.924-25. Mr. Amberg stated that he had advised Mr. Ramamoorthy of these guidelines, and that he had in fact advised him that the guidelines could be as high as 151 to 188 months depending on the enhancements sought by the government. *Id.* at 11:8-20, PageID.925. The Court addressed Mr. Ramamoorthy and asked him if he understood, and through the interpreter he stated on the record that he understood. *Id.* at 12:1, PageID.926. The Court again advised Mr. Ramamoorthy that the plea offer would limit his possible sentence to no greater than 87 months, and then inquired whether he wished to accept or reject the plea agreement. Mr. Ramamoorthy responded, "I wish to go for trial." *Id.* at 15:3, PageID.929.

Trial commenced on August 9, 2018 and the jury found the defendant guilty on August 15. Mr. Ramamoorthy was sentenced on December 13, 2018. ECF No. 70. He appealed his conviction, which was affirmed. Opinion and Judgment of U.S. Court of Appeals, ECF No. 91.

Mr. Ramamoorthy filed this habeas petition under 28 U.S.C. § 2255 on March 9, 2020 shortly before the outbreak of the COVID-19 pandemic. ECF No. 93. His motion makes a three-part claim of ineffective assistance of counsel. He alleges the performance of his trial counsel, James Amberg, was so deficient as to create a fundamental defect in proceedings, making his eventual sentence invalid.

In its Response to the Motion, the government disagreed with Ramamoorthy's claims but agreed the Court should hold an evidentiary

hearing as to the question of whether Mr. Amberg "provided Ramamoorthy with advice about whether to accept the government's offer." ECF No. 97, PageID.2134. The government submitted an affidavit from Mr. Amberg stating he had discussed the plea agreement with his client and that he did provide advice regarding the plea. ECF No. 97, PageID.2144. Mr. Ramamoorthy disagreed, contending that his attorney did not provide his with advice regarding the plea agreement and the decision whether to plead guilty.

When such a conflict exists, to make a finding regarding whether petitioner's claims are valid, the Court is required to hold an evidentiary hearing. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). The Court therefore appointed counsel for Mr. Ramamoorthy and held a hearing by videoconference which was continued over several dates, finally concluding on September 30, 2021.[1] At the hearing, both Mr. Amberg and Mr. Mansour provided testimony, as well as Mr. Ramamoorthy. Having considered the evidence presented at these

---

[1] The Court began the evidentiary hearing on March 12, 2021, with testimony from Mr. Amberg and Mr. Ramamoorthy, as well as argument from counsel. Because Mr. Amberg testified that he was accompanied by co-counsel Victor Mansour in a meeting with Mr. Ramamoorthy in which the plea decision was allegedly discussed, the Court indicated it wished to hear from Mr. Mansour and ordered a continuation so that he could testify. ECF No. 70. The next hearing was scheduled for June 14, 2021 but had to be continued because the prison where Mr. Ramamoorthy was confined failed to produce him for the video hearing. The hearing resumed on September 30, 2021, with testimony from Mr. Mansour and a second time from Mr. Ramamoorthy.

6

hearings, as well as supplemental briefing submitted by both Parties, the Court concludes that the Motion is not well-taken and must be denied.

## II. STANDARD OF REVIEW

A prisoner serving a sentence imposed by a federal court may challenge that sentence under 28 U.S.C. § 2255 "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." As relief, the prisoner may move the court which imposed the sentence to correct, vacate, or set it aside. The law is clear that "§ 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involve 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotations omitted)). This standard is met only in exceptional circumstances; not every alleged error of law can be raised on a § 2255 motion. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Davis*, 417 U.S. at 346.

## III. ANALYSIS

Mr. Ramamoorthy contends that his Sixth Amendment right to counsel was violated because his lawyer James Amberg rendered ineffective assistance of counsel, by failing to provide him with a copy of

7

the plea agreement and failing to provide advice concerning the merits of pleading guilty versus going to trial. This failure, he alleges, entitles him to relief under § 2255.

The Supreme Court has interpreted the Sixth Amendment as guaranteeing the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show a *Strickland* violation, the movant must (1) show that his "counsel's performance fell below an objective standard of reasonableness," and (2) provide evidence indicating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Ramamoorthy makes several arguments as to why he believes his trial counsel's performance was ineffective. The Court will address each in turn.

### A. Failure to offer advice regarding desirability of plea offer

Ramamoorthy's most serious allegation is that Mr. Amberg did not provide him any advice as to whether to accept the government's plea offer, and instead assured him he would be acquitted if he went to trial. ECF No. 93, PageID.2123. He states that he was "offered no advice regarding the desirability of the plea," that his counsel did not "afford [him] an opportunity to consider the plea offer" and "did not discuss" with him the strength of the state's case, but instead "assure[d] [him] that he would be acquitted of the single charge if he proceeded to trial." *Id*. at PageID.2123-24.

8

As to whether Mr. Ramamoorthy was aware of the plea offer, and whether Mr. Amberg discussed it with him, the proceedings before the Court during the final pretrial conference are relevant. As discussed above, at the pretrial conference, Mr. Amberg began the hearing by stating that he had gone over the plea agreement with Mr. Ramamoorthy just before the hearing. The terms of the plea offer and the consequences of going to trial were explicitly discussed during the hearing, and Mr. Ramamoorthy several times affirmed that he understood both possibilities.

While it is clear from the colloquy during the pretrial conference that Mr. Ramamoorthy had been advised (1) that there was a plea agreement; (2) that the agreement contemplated a certain sentencing guideline range; and, (3) that the sentence could be even higher than that range if he were convicted after a trial, the record did not state one way or the other whether Mr. Amberg gave Mr. Ramamoorthy advice regarding the advisability of pleading guilty versus going to trial. Therefore, the Court held evidentiary hearings to take testimony regarding this question; Mr. Amberg, Mr. Mansour, and Mr. Ramamoorthy all testified.

Upon direct examination by his attorney, Mr. Ramamoorthy stated in pertinent part (through an interpreter), that between June and July of 2018 he was not told anything about a plea offer, that he did not see the written Rule 11 plea agreement before the pretrial conference, and

9

that the first time he actually saw the written plea agreement document "was in January . . . of this year" (January 2021) when his habeas counsel sent it to him. Tr. 3/12/21 12:3-6, 13:9-19, ECF No. 108, PageID.2183-84. He stated that on the day of the pretrial conference, Mr. Amberg "did not talk to [him]" about a plea offer and "did not tell [him] anything" about the advantages and disadvantages of a plea bargain. Mr. Ramamoorthy also testified that "[on] that particular day I did not have a good translator so I did not understand anything." *Id.* at 13:21-14:13, PageID.2184-85. When asked why he told the Court he wanted to go to trial, he said that "I did not know anything about the plea deal . . . they did not tell me. So all the motivation was towards the trial." *Id.* at 16:15-18, PageID.2187.

In contrast, Mr. Amberg testified that he received a plea offer from the government by email on June 26, 2018, and that he discussed it with Mr. Ramamoorthy "numerous times," including "the day of the final pretrial." *Id.* at 28:2-8, PageID.2199. As previously noted, Mr. Amberg stated the same thing on the record during the pretrial conference. Mr. Amberg next noted that he had previously had concerns about ensuring that Mr. Ramamoorthy was getting an accurate understanding and effective translation in the case. Referring to the meeting with Mr. Ramamoorthy that took place in the courthouse just prior to the final pretrial conference, Mr. Amberg testified:

> [S]o I wanted to make sure [Ramamoorthy] understood exactly what he was rejecting. So what we did was myself, Mr. Ramamoorthy, Mr. Nanda, the translator, and Victor Mansour who co-counseled the case with me all went into the room . . . and I went line by line through that Rule 11 plea agreement and guidelines calculations with Mr. Ramamoorthy to make sure he understood before we got on the record.

*Id.* at 28:12-20, PageID.2199. According to Mr. Amberg, during this meeting, he "would repeatedly ask to make sure that Mr. Ramamoorthy understood," and that Mr. Ramamoorthy did indicate that he understood. *Id.* at 28:23-29:1, PageID.2199-2200.

Mr. Amberg further testified that he discussed the plea agreement not only at the meeting on the day of the final pre-trial conference, "but even beforehand and in the months leading up . . . [Ramamoorthy] was never interested in a plea but I would bring it up. . . . I made sure to let him know that there—if he were to go to trial and lose, that he was facing guidelines that I calculated to be even higher than that of the government's, and he understood that." *Id.* at 30:1-4, 9-14, PageID.2201. He described discussions with Mr. Ramamoorthy regarding the strongest parts of the government's case, and denied ever guaranteeing acquittal: "I have never guaranteed anybody would win . . . that's the conversation I have not just with every client . . . but specifically with Mr. Ramamoorthy so he understood that he could lose this trial." *Id.* at 31:12-25, 32:5-11, PageID.2202-03. According to Mr. Amberg, he advised Mr. Ramamoorthy as to the advantages of the plea agreement because he

11

explained that if went to trial and lost, he could face a greater penalty. He stated that he did not see it as his role to make the decision for his client as to whether to plead guilty or go to trial, but rather to make sure the defendant understood the consequences of either decision. *Id.* at 46:6-22, PageID.2217.

At a subsequent hearing, Mr. Mansour, who acted as co-counsel on this case, testified that he was present for the August 2, 2018 final pretrial conference and the meeting prior with Mr. Amberg, Mr. Ramamoorthy, and an interpreter. He stated that he and Mr. Amberg discussed the government's plea offer with Mr. Ramamoorthy during that meeting, going through "each paragraph and line," which took "between 20 and 30 minutes." Tr. 9/30/21 at 11:20-12:10, ECF No. 117, PageID.2296-97. He noted that he could not recall whether Mr. Amberg offered advice about the plea during that meeting, but that "there was back-and-forth dialogue" and that "it was pretty in-depth." *Id.* at 12:13-13:2, PageID.2297-98. He recalled that Mr. Amberg would say "I want to make sure you understand what this is" and "I want to make sure that everything is clear" to confirm Mr. Ramamoorthy's comprehension of the conversation. *Id.* at 14:3-6, PageID.2298. He stated that Mr. Ramamoorthy was provided with a copy of the plea agreement at this meeting. *Id.* at 19:22-24, PageID.2304. He stated that Mr. Amberg offered "no encouragement" to either accept the Rule 11 agreement or go to trial, and that he did discuss the strengths and weaknesses of the

12

government's case. *Id.* at 24:13-25:6, PageID.2309-10. He lastly stated to the Court that based on his observations, "it did appear that [Mr. Ramamoorthy] understood" the issues that were discussed regarding the plea agreement. *Id.* at 29:12-16, PageID.2314.

The testimony of Attorneys Amberg and Mansour is in direct conflict with that of Mr. Ramamoorthy. Mr. Ramamoorthy claims he was offered no advice about the plea agreement, that he did not understand what was happening at the final pretrial conference, and that he did not even see the plea agreement until long after his conviction, in January of 2021. Having carefully considered the testimony of the witnesses, as well as the whole record, the Court finds the testimony of Attorneys Amberg and Mansour to be more credible than that of Mr. Ramamoorthy.

As to the issue of whether Mr. Ramamoorthy adequately understood what was happening during the final pretrial conference due to an allegedly inadequate interpreter/translator, the Court takes this issue very seriously. Indeed, during the final pretrial conference, the Court directed the interpreter to make sure he was providing simultaneous translations. Tr. 8/2/18 at 12:6-18, ECF No. 80, PageID.926. The same issue arose at the start of the trial, and when Mr. Ramamoorthy complained about the quality of the interpreter, the Court postponed the trial to ensure that an interpreter was present whom Mr. Ramamoorthy found competent. Tr. 8/8/18 at 115:19-18:14, ECF No. 81, PageID.1075-78.

13

Certainly, if a defendant truly is unable to understand what is being said in a hearing where he is advised of the terms of a potential plea deal and the alternative consequences of going to trial, that defendant is not able to make an informed decision as to which option is in his best interest. But here, Mr. Ramamoorthy's claim in his § 2255 petition that he was completely unable to understand the proceedings where the plea agreement was discussed is inconsistent with the surrounding circumstances and the prior procedural history of this case. The Court specifically asked Mr. Ramamoorthy if he understood what was going on multiple times during the pretrial conference, and he stated that he did.[2] Mr. Amberg testified to the fact that Mr. Ramamoorthy does speak and understand at least some English, and that "when I first met him, he had a harder time speaking with me in English," but "as this went on, he got better at it. . . . [We] met, you know, many times and were able to communicate with each other." Tr. 3/12/21 at 36:5-8, ECF No. 108, PageID.2207. Mr. Amberg also testified to having discussed the plea agreement with him on previous occasions. The Court rejects as

---

[2] While such affirmations may be of little trustworthiness where there is truly a language barrier and a defendant is a foreign national who is unfamiliar with the U.S. court system, here Mr. Ramamoorthy had attended numerous court hearings without an interpreter, with several different defense attorneys, and never claimed to have any problem with comprehension until that issue was raised in his motion to suppress. Consequently, the Court does not credit Mr. Ramamoorthy's statement that he did not understand the discussion of the plea agreement that took place on the record during the final pretrial conference.

unworthy of belief Mr. Ramamoorthy's assertion that he "did not know anything about the plea deal." The record belies this claim because the plea deal was disclosed in open court. The claim of ineffective assistance of counsel cannot proceed on this ground.

As to whether Mr. Amberg was ineffective for failing to provide advice regarding the advisability of the plea agreement, the Court again finds the attorney testimony more credible that Mr. Ramamoorthy's. Mr. Amberg testified that he discussed the plea agreement with his client "numerous times," and that on the day of the final pretrial conference, "I wanted to make sure he understood exactly what he was rejecting" such that he "went line by line through the Rule 11 Plea Agreement and the guidelines calculation with Mr. Ramamoorthy to make sure he understood" before the conference. *Id.* at 28:2, 18-20, PageID.2199. In answer to the question, "Did you give him advice about—about the government's plea offer?", Mr. Amberg testified, "I did, not only there on that day, but even beforehand and in the months leading up to the final pretrial we discussed the possibilities of pleading." *Id.* at 30:1-3, PageID.2201.

In response to the Court's question, "When you would speak with [Mr. Ramamoorthy] about the possible Plea Agreement in this case, would you discuss the advantages and disadvantages of accepting the Plea Agreement?" Mr. Amberg stated, "Absolutely. What—what I discussed with him is what I would discuss with any client when you

15

discuss the advantages of the plea in this case, basically beyond the cap." *Id.* at 45:19-22, PageID. 2216. He further stated, "All I can do, Judge, is I can tell the clients my opinions about where they stand, the strength of the government's case, the strength of their defense, but I don't tell the clients what to do." *Id.* at 46:6-9, PageID.2217.

      Mr. Victor Mansour also testified and corroborated Mr. Amberg's version of what happened. He said they met with Mr. Ramamoorthy and went over the plea agreement line-by-line. Tr. 9/30/21 at 11:25-12:3, PageID.2296-97. He could not recall what professional advice was given, but he remembered the plea agreement being reviewed in its entirety and a back-and-forth dialogue between Mr. Amberg and Mr. Ramamoorthy. *Id.* at 12:13-24, PageID.2297. Under cross-examination, Mr. Mansour was asked whether Mr. Amberg "made any recommendations to Mr. Ramamoorthy about the Rule 11 Agreement," and responded, "I want to say yes, but I don't recall, to be completely honest, if he actually gave him his personal opinion on it. I believe there was discussion on thoughts, but I don't recall the exact language." *Id.* at 24:3-6, PageID.2309. He further said that he recalled Mr. Amberg indicating that "it was a good deal if he—if this happened," but that he did not encourage the client either to take the deal or to go to trial. *Id.* at 24:11-17, PageID.2309.

      Based on a careful review of the record, the Court does not find Mr. Amberg's conduct here to be ineffective assistance of counsel. He made certain Mr. Ramamoorthy understood the pros and cons of the plea

16

agreement as opposed to the consequences of going to trial. Although he did not make a firm recommendation as to what his client should do, he pointed out how it was "a good deal". Such counsel does not fall below the standard of a reasonable criminal defense attorney.

### B. Failure to advance certain arguments regarding victim

Mr. Ramamoorthy next argues that his counsel represented he would make certain arguments about the victim, including that she "was an exotic dancer" and that she "had only made the allegations so that she could sue the airline" and was somehow committing fraud. ECF No. 93, PageID.2124. Mr. Amberg did not in fact make any of those arguments at trial, which Ramamoorthy says entitles him to relief.

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within a wide range of professional assistance." *Strickland*, 466 U.S. at 689. In particular, courts are instructed to give a "healthy amount of deference to counsel's tactical and litigation decisions; they are "virtually unchallengeable" in the ordinary case." *Vasquez v. Bradshaw*, 345 F. App'x 104, 115 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 690).

Mr. Ramamoorthy is correct that arguments about the victim's profession were not made at trial. But to the extent that this type of argument was discussed prior to trial, avoiding the topic seems clearly to

17

be a tactical decision on Mr. Amberg's part.³ He did cross-examine the victim, and as the government correctly points out, it is a reasonable strategic choice to not make "potentially inflammatory allegations about a sexual assault victim during a jury trial." ECF No. 97, PageID.2142. Mr. Ramamoorthy does not provide any evidence that the decision to not mention the victim's occupation was clear error that would overcome the presumption to defer to counsel's strategic choices. He may be disappointed that the argument was not made, but this type of disagreement with an attorney's professional choices is not actionable under *Strickland*. It is also far from conclusive that raising that argument would have changed the outcome of the trial such that the failure to raise these issues caused any prejudice. Indeed, it is not implausible that such questions could have backfired and caused the jury to sympathize with the victim and dislike the defendant. The claim also cannot proceed on this ground.

### C. Failure to discuss potential sentencing exposure

Lastly, Ramamoorthy alleges that Mr. Amberg "never discussed" his potential sentencing exposure, and that counsel "did not inform

---

³ Mr. Amberg disputes that he had evidence that the victim was an exotic dancer, stating that his investigation "revealed that the Complainant was a swimsuit model." "Allegation Three," ECF No. 97-1, PageID.2150. He further states that though he "investigate[d] as much as possible" the victim's potential motives for making claims against Mr. Ramamoorthy, he did not eventually find any evidence of a civil lawsuit filed by the victim. "Allegation Four," ECF No. 97-1, PageID.2150.

18

[Ramamoorthy] that if he entered a plea of guilty (even without a plea agreement)," he could "reduce his sentencing exposure." ECF No. 93, PageID.2124. This argument was discussed in large part previously, as it related to the plea agreement discussion.

"A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Complete failure to do this can satisfy the first prong of the *Strickland* analysis without further inquiry. *Id.* Any other allegations regarding the extent to which sentencing exposure was or was not discussed must be evaluated under *Strickland's* objective reasonableness standard. In either scenario, Mr. Ramamoorthy would still have to show prejudice.

As noted, Mr. Amberg represented at the pretrial hearing that he had discussed the possibility of greater exposure at trial with his client, and Mr. Ramamoorthy indicated that he understood. ECF No. 80, PageID.925, 928. At the evidentiary hearing, Mr. Amberg further testified that he went over the various sentencing possibilities with Mr. Ramamoorthy—what was in the plea offer, what a basic guidelines range would be, and what it the guidelines range could be if the government sought certain enhancements—right before the final pretrial conference, and "made sure . . . that we discussed that at length and he understood that." Tr. 3/12/21 at 41:12-42:1, ECF No. 108, PageID.2212.

This once again becomes a credibility determination, pitting Mr. Amberg's testimony against Mr. Ramamoorthy's as to whether this topic was discussed and whether Mr. Ramamoorthy understood the information that was being presented to him. Again, the testimony of Mr. Mansour corroborates Mr. Amberg's, while Mr. Ramamoorthy's testimony is contradicted by what he said during the pretrial conference. This argument is therefore also insufficient to show ineffective assistance of counsel.

## CONCLUSION

Mr. Ramamoorthy has not shown a claim of constitutional error that justifies correction, modification, or vacatur of his sentence. Therefore, his petition for relief under 28 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED**, this 26th day of April, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge